McBRIDE, Judge.
On the morning of October 19, 1963, plaintiff’s automobile, which he was driving, was run into and struck from the rear by defendant Graugnard’s automobile; plaintiff filed this suit which is directed against Graugnard and his liability insurer to recover property damage and for personal injuries, etc. After a trial by jury he recovered judgment for $1000 from which he appealed. Defendants neither appealed nor answered plaintiff’s appeal. We are at a loss to know how the jury arrived at the amount of the judgment; plaintiff claimed $350 for damages to his automobile, a very large amount for personal injuries, and $1500 for medical expenses, present and future.
Plaintiff’s only contention is that the judgment is grossly inadequate and should be increased to the sum of $7500. So, therefore, we are only concerned with whether there were physical injuries, and if so, the nature, extent and duration thereof and the amount of the medical expenses.
Plaintiff at the time of the accident was 63 years of age; he is a fur trapper, fisherman and duck hunter. He boasted of his physical prowess and claimed he could run one-half mile each day, lift a 200 pound sack to his shoulders, do five push ups and on the horizontal bar he-could do eight or nine chin ups. tie maintained he was in perfect physical shape but that his condition deteriorated substantially-as a result of the accident.
At the scene plaintiff told the investigating police officer that he experienced immediate pain when the crash occurred and. was still in pain. However, it is a singular circumstance that plaintiff did not seek medical attention for his alleged injuries-until many months later.
Pie states that some time prior to March-2, 1964 (nearly five months after the accident), after reading an article in- a magazine that men over 50 years of age were likely to become victims of cancer of the prostate gland, he went to a Dr. Caire, who was never produced as a witness, for examination of a prostatic condition-. Plaintiff saw Dr. Caire on but three occasions and only with reference to the-said condition.
The next medical treatment plaintiff sought was from Dr. Pratt, a urologist, who-treated him intermittently over a two-year period for mild chronic prostatitis.
On May 26, 1964 (seven months after the accident) plaintiff called upon D'r; Winokur (who stated the patient was referred to him by Dr. Caire), a specialist: in the field of physical rehabilitation, who. treated him for nearly a year. Plaintiff received treatments from Dr. Winokur-during the period he was visiting Dr. Pratt-, for the prostatitis and Dr. Pratt states that on one of his visits plaintiff told him. *311 that he was being treated by Dr. Wmokur for arthritis in the back.
Dr. Winokur’s course of treatment consisted of diathermy, ultrasound therapy ■and massage. He states he advised plaintiff to take some postural exercises to •strengthen his abdominal musculature which supports the back. Plaintiff was ■complaining of lower back pains, but to the ■doctor’s independent recollection he gave no history of having been injured in an automobile accident. Dr. Winokur’s findings were a chronic lower back strain with lower syndromes which the doctor said ■could occur with or without an injury. Dr. Winokur was unwilling to relate plaintiff’s condition to an automobile accident that happened two years previously. He examined plaintiff the day before the trial and pointed out the significant fact that the pain plaintiff claimed he was still suffering was in a different location from the pain originally complained of.
There is another physician who testified, namely, Dr. Battalora, an orthopedist, who saw plaintiff on two occasions, the first time on June 1, 1964, more than two years after the accident. Dr. Battalora’s X-rays were negative for bony injury. The pictures showed a marked osteoarthritis or hypertrophic changes throughout the lumbar area. There was an increase of the lumbar lordosis. Dr. Battalora did not feel that the patient was permanently disabled from carrying on his occupation, but due to a marked swayback and heavy abdomen, he had a chronic postural strain to the lower back, which could be the cause of his complaints of discomfort. His condition is a postural one. Dr. Battalora stated that any sort of trauma such as would result from jumping in and out of boats, heavy lifting or “falling down in the marshes”, etc., might have been the cause of plaintiff’s pain.
We are not satisfied that plaintiff was injured in the accident. A most suspicious circumstance is the fact that he only sought treatment for the lower back condition at a very remote time subsequent to the alleged trauma. If plaintiff was actually injured why, we ask, did he wait so long to seek medical aid? It is most likely that, as Dr. Battalora said, plaintiff, because of his age, “was getting at the end of a period of heavy type manual activity.” We certainly can discern no reason for increasing the amount of the judgment.
Therefore, it is affirmed.
Affirmed.